UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS *ex rel.* FERZAD ABDI,<br><br>    Plaintiffs,<br><br>v.<br><br>AARON JAMES ROSSI; REDITUS LABORATORIES, LLC; REDITUS HEALTHCARE, LLC; and PR MANUFACTURING ENTERPRISES, LLC d/b/a PAL HEALTH TECHNOLOGIES, LLC,<br><br>    Defendants. | Case No. 1:22-cv-01204-SLD-JEH |

ORDER

Before the Court are Defendant Reditus Laboratories, LLC's ("Reditus Labs") Motion to Dismiss the First Amended Complaint, ECF No. 31, and Motion for Leave to File Reply Brief in Support of Its Motion to Dismiss, ECF No. 37. For the reasons set forth below, the motions are GRANTED.

BACKGROUND[1]

Relator Ferzad Abdi brings this *qui tam* action on behalf of the United States and the State of Illinois, alleging Defendants violated the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33, the Illinois False Claims Act ("IFCA"), 740 ILCS 175/1–8, and the Illinois Insurance Claims Fraud Prevention Act ("IICFPA"), 740 ILCS 92/1–45. The following allegations are drawn from Abdi's original complaint, Abdi Compl., ECF No. 1, filed June 17,

---

[1] When reviewing a motion to dismiss, the Court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). As explained in detail below, the factual background is drawn from Abdi's original complaint, ECF No. 1.

1

2022. Abdi filed an amended complaint, ECF No. 29, on December 22, 2023, but for reasons discussed below, it is Abdi's original complaint that matters for purposes of the pending motion to dismiss.

Abdi is an employee of LigoLab, a software vendor that provided laboratory information and billing systems to Reditus Labs soon after Reditus Labs was founded in June 2019. After starting at LigoLab in February 2020, Abdi regularly interacted with Defendant Aaron Rossi ("Aaron"), the CEO and majority owner of Reditus Labs, to address billing issues and handle requests to modify or add features to the billing software.

From February 2020 through the filing of this lawsuit, "Reditus Labs submitted and [Aaron] caused to be submitted hundreds of thousands of false claims for payment to the United States, the State of Illinois and private insurers for COVID-19 nasal swab PCR tests it collected from patients and collected by others without regard to medical necessity." Abdi Compl. ¶ 41 (emphasis omitted).

Aaron and Reditus Labs's conduct comprised seven schemes: (1) they directed their lab processors to manually add the diagnosis code for suspected COVID-19 exposure on all COVID-19 testing orders even when the ordering provider did not include that diagnosis code; (2) they rigged the billing software to automatically add the diagnosis code for suspected COVID-19 exposure on all COVID-19 tests billed to the government and private payers even when the ordering provider did not document suspected exposure and the patient reported no COVID-19 symptoms or potential exposure; (3) they failed to bill private insurance for COVID-19 tests even though their contracts with the State of Illinois required that they submit claims first to private insurance before seeking payment from the State; (4) they double-billed private payers, the State of Illinois, and the federal government; (5) they double-billed the ordering provider and

government payers; (6) they paid kickbacks—in the form of free or substantially discounted COVID-19 lab tests for ordering providers—to induce referrals for lab tests reimbursed by government and private payers; and (7) they upcoded billings for COVID-19 and pathology lab tests by inappropriately adding the billing code for "specimen retrieval," "a code used for biopsy cases where a specimen previously tested is retrieved from a freezer for retesting." *Id.* ¶ 44(7).

Abdi filed his complaint on behalf of the United States and State of Illinois under seal as required by 31 U.S.C. § 3730(b)(2) on June 17, 2022, at 5:49:58 p.m. *See generally* Abdi Compl. About nineteen minutes earlier at 5:30:11 p.m., a different relator, Dr. Lorine LaGatta, had filed a similar *qui tam* action under seal in this Court against many of the same defendants. LaGatta Compl. 1, *United States ex rel. LaGatta v. Reditus Lab'ys et al.*, No. 1:22-cv-01203 (C.D. Ill. June 17, 2022) ("LaGatta Action"), ECF No. 1. The Government declined to intervene in Abdi's suit. Gov't's Not. Decline Intervention, ECF No. 11. Abdi filed his First Amended Complaint on December 22, 2023 "to remove claims which overlap with" the LaGatta Action. Abdi First Am. Compl. ¶ 1. On February 20, 2024, Aaron and Defendant PR Manufacturing Enterprises, LLC d/b/a PAL Health Technologies, LLC ("PAL Health") filed an answer, ECF No. 30, and Reditus Labs filed its motion to dismiss. Reditus Labs argues that Abdi's suit should be dismissed (1) under the FCA's first-to-file bar because the LaGatta Action was filed first, Mem. L. Supp. Mot. Dismiss 3–7, ECF No. 32, (2) because Abdi fails to state his claims with the particularity required of fraud claims, *id.* at 8–19, and (3) because the *qui tam* provisions of the FCA are unconstitutional, *id.* at 19. To date, Reditus Healthcare has not filed any responsive pleading nor has any attorney entered an appearance on its behalf.

3

## DISCUSSION

I.  **Motion for Leave to File a Reply**

Reditus Labs moves for leave to file a reply in support of its motion to dismiss. *See generally* Reditus Labs Mot. Reply. Abdi opposes this motion, asserting that the motion was untimely filed and that the reply simply reiterates the same arguments from the motion to dismiss. Obj. Reditus Labs Mot. Reply 1–2, ECF No. 39. Abdi "acknowledges" that the Local Rules "do not explicitly specify a timeframe for [Reditus Labs] to seek leave to file a reply" in support of a motion to dismiss but still argues the motion is untimely. *Id.* at 2; *see also* Civil LR 7.1(D)(3) (setting a fourteen-day deadline for a movant to file a reply on a motion for summary judgment).

On a motion to dismiss, "[n]o reply to the response is permitted without leave of Court." Civil LR 7.1(B)(3). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the [c]ourt finds that a reply from the moving party would be helpful to its disposition of the motion." *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). A court may also permit a reply "in the interest of completeness." *Zhan v. Hogan*, No. 4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).

As Abdi concedes, the Local Rules do not provide a deadline for a party to file a motion for leave to file a reply so the Court will not deny Reditus Labs's motion on the basis of untimeliness. The Court finds that Reditus Labs's proposed reply would be helpful and therefore, in the interest of completeness, the motion for leave to file a reply is GRANTED. The Clerk is directed to file the proposed reply, ECF No 37-1, on the docket.

## II. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." "The purpose of a motion to dismiss is to challenge the sufficiency of the complaint, not to decide its merits." *Dutch Valley Growers, Inc. v. Rietveld*, No. 16-2085, 2016 WL 10789393, at *2 (C.D. Ill. Aug. 29, 2016). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "[D]etailed factual allegations are unnecessary," *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016), but the complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### a. Analysis

The federal FCA prohibits knowingly submitting, or causing to be submitted, false or fraudulent claims for payment to the federal government, 31 U.S.C. § 3729(a)(1)(A), and knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim, *id.* § 3729(a)(1)(B). Private parties, called relators, can bring civil *qui tam* suits on behalf of the government to enforce the FCA. *Id.* § 3730(b); *Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*, 575 U.S. 650, 653 (2015).

The IFCA "closely mirrors the FCA," *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 716 n.2 (7th Cir. 2017) (quotation marks omitted), and imposes liability on anyone who submits or causes the submission of false claims to the State, *United States v. A Plus Physicians Billing Serv., Inc.*, No. 13 C 7733, 2015 WL 8780548, at *3 (N.D. Ill. Dec. 15, 2015); 740 ILCS 175/3(a)(1). The Seventh Circuit has "not found any difference between the [FCA and

5

IFCA] that is material to a jurisdictional or merits analysis." *Bellevue*, 867 F.3d at 716 n.2; *United States v. Walgreen Co.*, 417 F. Supp. 3d 1068, 1084 (N.D. Ill. 2019) ("Courts evaluate IFCA claims under the same standards as those applicable to FCA claims.").

The IICFPA imposes civil penalties for fraud against private insurance companies. 740 ILCS 92/1–45. The statute creates a private right of action against anyone who violates any provision of the IICFPA or the criminal code sections relating to insurance fraud. 740 ILCS 92/5(b); 720 ILCS 5/17-10.5(a)(1) ("A person commits insurance fraud when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company . . . by the making of a false claim or by causing a false claim to be made . . . intending to deprive an insurance company . . . permanently of the use and benefit of that property."); *see also State ex rel. Leibowitz v. Fam. Vision Care, LLC*, 181 N.E.3d 790, 792–93 (Ill. 2020).

Reditus Labs argues Abdi's complaint must be dismissed because he "lost the race to the Courthouse," because he failed to plead his fraud claims with particularity under the heightened standard required by Federal Rule of Civil Procedure 9(b), and because the *qui tam* provisions of the FCA are unconstitutional. Mem. L. Supp. Mot. Dismiss 3–19. Because the first-to-file bar is dispositive, the Court need only address Reditus Labs's first argument.[2]

---

[2] Reditus Labs moves to dismiss under Rule 12(b)(6). Mot. Dismiss 1. As Reditus Labs points out, some courts treat the first-to-file bar as jurisdictional—and accordingly, those courts consider motions to dismiss under Rule 12(b)(1). Mem. L. Supp. Mot. Dismiss 7 n.4. Neither the Supreme Court nor the Seventh Circuit has squarely addressed this issue, but the recent trend is to treat the first-to-file bar as nonjurisdictional based in part on the Supreme Court's repeated emphasis that "procedural rules . . . cabin a court's power only if Congress has clearly stated as much." *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015) (alteration and quotation marks omitted). *See also United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) ("Because nothing in the text or structure of the first-to-file rule suggests, let alone clearly states, that the bar is jurisdictional, we hold that the first-to-file rule bears only on whether a *qui tam* plaintiff has properly stated a claim." (alterations and quotation marks omitted)). This Court agrees with the reasoning of the courts that have designated the first-to-file bar as nonjurisdictional and proceeds with its analysis of the pending motion under Rule 12(b)(6). *See also United States ex rel. Berkowitz v. Automation Aids*, No. 13 C 08185, 2017 WL 1036575, at *10 (N.D. Ill. Mar. 16, 2017) ("Really, the first-to-file bar functions more like a preclusion defense rather than a jurisdictional ban."), *aff'd on other grounds sub nom.*, *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834 (7th Cir. 2018).

The FCA's first-to-file bar provides: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The IFCA and IICFPA contain nearly identical provisions. 740 ILCS 175/4(b)(5) ("When a person brings an action under [the *qui tam* provision of the IFCA], no person other than the State may intervene or bring a related action based on the facts underlying the pending action."); 740 ILCS 92/15(e) ("When a person . . . brings an action under [the IICFPA], no person other than the State's Attorney or Attorney General may intervene or bring a related action based on the facts underlying the pending action unless another statute or common law authorizes that action."). The Court, then, has two questions to answer: (1) Was the LaGatta Action "pending" when Abdi's action was brought? and (2) Is Abdi's action "related" and "based on the facts underlying" the LaGatta Action? *See* 31 U.S.C. § 3730(b)(5).

It is undisputed that the LaGatta Action was "pending" when Abdi filed his original complaint. "The term 'pending' means 'remaining undecided; awaiting decision,'" *Carter*, 575 U.S. at 662 (alteration omitted) (quoting *Pending*, *Black's Law Dictionary* (10th ed. 2014)), and the LaGatta Action certainly remained undecided when Abdi filed his complaint nineteen minutes later.

Next the Court must determine whether Abdi's suit is "a related action based on the facts underlying" the LaGatta Action. 31 U.S.C. § 3730(b)(5). "The first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints." *In re Nat. Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 964 (10th Cir. 2009); *see also United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) ("Similarity is assessed by comparing the complaints side-by-side. . . ."). Abdi brought his action in June

2022 but has since amended his complaint, prompting the question: Which of Abdi's complaints should the Court compare side-by-side to the LaGatta Action?

Abdi avers that his amended complaint is the proper object of the Court's first-to-file bar analysis because he only amended his complaint to remove claims that overlapped with the LaGatta Action and states that the schemes he alleges in the amended complaint are "materially different," "unrelated," and "wholly unique" from those in the LaGatta Action. Opp. Mot. Dismiss 5, 7, 19, ECF No. 36. Abdi argues that courts within the Seventh Circuit have followed this approach when a later-filing relator amends his complaint to remove overlapping claims—but he cites to just one case to support that argument. *Id.* at 7 (citing *United States ex rel. Berkowitz v. Automation Aids*, No. 13 C 08185, 2017 WL 1036575, at *10–11 (N.D. Ill. Mar. 16, 2017), *aff'd on other grounds sub nom.*, *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834 (7th Cir. 2018)).

The Court is not persuaded by Abdi's argument. The district court in *Berkowitz* did not give any explanation for why it analyzed the plaintiff's third amended complaint, *see id.* at *11, whereas most courts that have expressly considered this issue have come to the opposite conclusion. The D.C., Second, and Eleventh Circuits have all held that the proper point of reference for a first-to-file bar comparison is the later-filing relator's original complaint—not an amended complaint—because the act of bringing the action by filing the original complaint "infringe[s] the first-to-file bar." *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 929 (D.C. Cir. 2017). Although "a plaintiff can often cure a pleading defect by amending the complaint," an amended *complaint* does not change when a later-filed *action* was brought for purposes of the first-to-file bar. *Id.*; *see also United States ex rel. Mohajer v. Omnicare, Inc.*, 525 F. Supp. 3d 447, 461 (S.D.N.Y. 2021) (holding that the relators "could not save their FCA

8

claim from the first-to-file bar simply by amending their complaint" because "amending . . . a complaint does not bring a new action" (quotation marks omitted)); *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 172 (2d Cir. 2018) (holding that even after the later-filed relator amended his complaint, "his action still violated the first-to-file bar because he instituted legal proceedings, by filing the initial complaint, while a related action was pending"); *Cho ex rel. Florida et al. v. Surgery Partners, Inc.*, 30 F.4th 1035, 1038 (11th Cir. 2022) ("[W]e hold . . . that the FCA's plain language makes the original complaint—not the amended complaint—the proper point of reference for the first-to-file analysis.").

Another way to frame this inquiry is to ask: Can a violation of the FCA's first-to-file bar be cured by filing an amended complaint? The clear answer is "no." This comports with the Seventh Circuit's analysis in *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361 (7th Cir. 2010). The first-to-file bar speaks of "bring[ing]" an action, and "[o]ne 'brings' an action by commencing suit." *Chovanec*, 606 F.3d at 362. Abdi commenced his suit with the filing of his original complaint in this Court on June 17, 2022, at 5:49:58 p.m. Therefore, if Abdi's action violated the first-to-file bar at all, it violated it on June 17, 2022, at 5:49:58 p.m. and it "was incurably flawed from the moment he filed it." *Shea*, 863 F.3d at 930. "The first-to-file bar prohibits bringing a 'related *action*,' not a related *complaint*. . . . No matter how many times [a later-filing relator] amends his Complaint, it will still be true that he 'br[ought] a related action based on the facts underlying the [then] *pending* action.'" *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 30 (D.D.C. 2015) (third alteration in original) (quoting 31 U.S.C. § 3730(b)(5)), *aff'd sub nom., Shea*, 863 F.3d 923.

9

Accordingly, the Court proceeds with its first-to-file bar analysis by comparing LaGatta's original complaint and Abdi's original complaint.[3]

The first-to-file bar "essentially creates a race to the courthouse among eligible relators" while also encouraging "the prompt reporting of fraud." *United States ex rel. Batty v. Amerigroup Ill., Inc.*, 528 F. Supp. 2d 861, 872 (N.D. Ill. 2007) (quotation marks omitted); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 313 n.11 (2010) (Sotomayor, J., dissenting) ("[T]he FCA's first-to-file provision, 31 U.S.C. § 3730(b)(5), reflects Congress' explicit policy choice to encourage prompt filing and, in turn, prompt recovery of defrauded funds by the United States.").[4]

The first-to-file bar precludes a *qui tam* suit "based on the facts underlying [a] pending action." *Carter*, 575 U.S. at 654 (quoting 31 U.S.C. § 3730(b)(5)). The Seventh Circuit has interpreted "'related action based on the facts underlying the pending action' to specify only the materially similar situations that objectively reasonable readings of the original complaint, or investigations launched in direct consequence of that complaint, would have revealed." *Chovanec*, 606 F.3d at 365. There are essentially two ways for a second *qui tam* action to stumble on the first-to-file bar: "(1) the actions are related based on materially similar situations

---

[3] When evaluating two actions under the first-to-file bar, many courts conduct a claim-by-claim analysis. *See, e.g.*, *United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240, 253 (1st Cir. 2019). The parties do not cite to any Seventh Circuit precedent adopting this approach nor could the Court find any Seventh Circuit cases addressing this issue. A claim-by-claim analysis would be difficult here because both Abdi and LaGatta violate Federal Rule of Civil Procedure 10(b)'s admonition that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." In their respective complaints, LaGatta and Abdi both lump together all of their factual allegations—which span numerous defendants, organizations, time periods, subject matters, etc.—and then simply have one FCA false claim count. Assuming that each scheme is a separate claim for relief, *see NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("One set of facts producing one injury creates one claim for relief . . . ."), and assuming Abdi indeed merely deleted allegations regarding the three schemes that he concedes overlap with the LaGatta Action, whether the Court considers Abdi's original complaint or amended complaint seems inconsequential. *See Mohajer*, 525 F. Supp. 3d at 459 (reasoning that "[t]he result . . . [was] the same even if the Court look[ed] at the [later-filed relators'] amended complaint").
[4] This particular race is the litigation equivalent of a photo finish: The Court has found no other cases in which the time between a first-filed and later-filed action is a mere nineteen minutes.

10

discernible from the [first action's] complaint itself; or (2) the actions are related if an investigation launched because of the first would have revealed information about the second." *Berkowitz*, 2017 WL 1036575, at *10. The Seventh Circuit has clarified that "[i]t is not enough that claims be related in the loose sense that they arise out of the same general kind of wrongdoing; they must also have facts in common" and those common facts must "material" or "essential." *Chovanec*, 606 F.3d at 363. A second *qui tam* action is considered related and barred if it "contains merely variations of the fraud scheme described in the first action, even if the second action alleges additional or somewhat different details about the defendant's fraud." *Batty*, 528 F. Supp. 2d at 873 (citations omitted).

Reditus Labs asserts that the LaGatta Action and Abdi's action are "essentially identical—they allege the same statutory violations based on the submission of the same claims for payment for the same COVID tests during the same time period to the same payers." Reditus Labs Reply 2. Reditus Labs emphasizes that the "first-to-file bar is not limited to situations in which the original and subsequent complaints rely on identical facts." Mem. L. Supp. Mot. Dismiss 4 (quoting *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004)). "Such a narrow reading would not only 'be contrary to the plain meaning of the statute, which speaks of "related" qui tam actions, not identical ones,' but also would undermine the purpose of the first-to-file bar, which is to put the government on notice of its potential fraud claim against the defendants." *Id.* (quoting *Grynberg*, 390 F.3d at 1279).

Abdi concedes that three of the schemes he alleged overlapped with the LaGatta Action: (1) failure to bill private insurance for COVID-19 tests even though contracts with the State of Illinois required that Reditus Labs submit claims first to private insurance before seeking payment from the State, *compare* Abdi Compl. ¶¶ 131–38, *with* LaGatta Compl. ¶¶ 80–84; (2)

11

payment of kickbacks—in the form of free or substantially discounted COVID-19 lab tests for ordering providers, including Midwest Urological Group—to induce lab test referrals, *compare* Abdi Compl. ¶¶ 146–50, *with* LaGatta Compl. ¶¶ 94–112; and (3) the upcoding of billings for COVID-19 and pathology lab tests by inappropriately adding the billing code for specimen retrieval (CPT 88363, retrieved archival tissue), *compare* Abdi Compl. ¶¶ 151–54, *with* LaGatta Compl. ¶¶ 53–69, 115–17.  Mot. Am. Compl. ¶ 14, ECF No. 28.  Because these three schemes are materially similar, any FCA claim based on these schemes is precluded by the first-to-file bar.

Contrary to Abdi's assertion that his four remaining schemes are "wholly unique," Opp. Mot. Dismiss 5, the similarities between the two actions extend even further.  As relevant here, in her original complaint, LaGatta filed suit against Reditus Labs, Tri-County Pathology, Midwest Urological Group, Aaron, Joseph Banno, and Larry Rossi.  LaGatta Compl. 2.  Similarly, Abdi names as defendants Aaron, Reditus Labs, Reditus Healthcare, PAL Health, and Midwest Urological Group.  Abdi Compl. 1.  *See In re Nat. Gas Royalties Qui Tam Litig.*, 566 F.3d at 962 ("The identity of a defendant is a fact . . . [and] a material element of a fraud claim.").

Abdi argues that the LaGatta Action does not address any scheme involving the manual or automatic addition of the diagnosis code for suspected COVID-19 exposure on billings for all COVID-19 tests or Reditus Labs's double billing practices between private and government payers and government payers and the ordering provider.  Opp. Mot. Dismiss 7.  Reditus Labs correctly points out, however, that even though LaGatta did not specifically allege facts regarding the manual or automatic addition of the suspected COVID-19 exposure diagnosis code, she repeatedly alleged that Reditus Labs's billing system auto-populated numerous

12

improper codes, thereby calling into question all of Reditus Labs's billing and placing the government on notice to investigate further. Mem. L. Supp. Mot. Dismiss 5–6. LaGatta also alleged that Reditus Labs "routinely billed government payers for COVID-19 tests that should have been paid by private payers." *Id.* at 6 (citing LaGatta Compl. ¶¶ 80–84). Reditus Labs argues that allegation is "materially similar" to Abdi's allegations that Reditus Labs double-billed state and federal government payers and private payers, *see* Abdi Compl. ¶¶ 139–45, "and certainly would have prompted an investigation as to how, and to whom, Reditus billed for COVID-19 tests," Mem. L. Supp. Mot. Dismiss 6.

Abdi's attempt to distinguish his action from the LaGatta Action draws too fine a line. For example, Abdi asserts that the fraud schemes alleged in the two complaints are distinct because they address different specific billing codes and lab tests. Opp. Mot. Dismiss 7; *id.* n.3 ("LaGatta's action addresses CPT Code 88363 (LaGatta action, d/e 1, ¶53), CPT Code G0452 and 88363 (*Id.* ¶62), and CPT Codes 87481, 87500, 87640, 87651, and 87653(*Id.* ¶70)."). But to reiterate, a later-filed action "need not allege *identical* facts – the relevant question is, instead, whether they allege the same essential claim or material elements," *United States ex rel. Cho v. H.I.G. Capital, LLC*, No. 8:17-cv-983-T-33AEP, 2020 WL 5076712, at *10 (M.D. Fla. Aug. 26, 2020) (emphasis added) (quotation marks omitted), *aff'd sub nom.*, *Cho*, 30 F.4th 1035, and the first-to-file bar can still preclude the later-filed action "even if the allegations incorporate additional or somewhat different facts or information," *United States ex rel. Bernier v. Infilaw Corp.*, 347 F. Supp. 3d 1075, 1083 (M.D. Fla. 2018) (quotation marks omitted).

A careful comparison of the allegations in LaGatta's original complaint and Abdi's original complaint reveals substantial similarities. Both actions: bring claims against Reditus Labs, Aaron Rossi, and Midwest Urological for conduct that occurred around 2020 to 2023;

allege that Defendants submitted false claims to capitalize on the COVID-19 pandemic; allege that false claims were submitted for payment to federal government payers, the State of Illinois, and private payers; allege that Defendants billed for services that were never performed or were medically unnecessary; allege that Defendants caused the billing software to auto-populate diagnosis codes; and allege that Defendants' actions were done knowingly, in violation of the FCA, IFCA, and IICFPA.  *Cf. Batty*, 528 F. Supp. 2d at 874.

The underlying facts are "materially similar," *Chovanec*, 606 F.3d at 365, and certainly an investigation launched as a result of LaGatta's original complaint would have revealed the essential facts comprising Abdi's action.  Accordingly, the first-to-file bar precludes Abdi's suit from proceeding and his suit shall be dismissed without prejudice.  *See id.* (holding that a dismissal under 31 U.S.C. § 3730(b)(5) should be without prejudice).

## CONCLUSION

For the foregoing reasons, Defendant Reditus Laboratories, LLC's Motion to Dismiss the First Amended Complaint, ECF No. 31, and Motion for Leave to File Reply Brief in Support of Its Motion to Dismiss, ECF No. 37, are GRANTED.  Relator Abdi Ferzad's action is DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to file the proposed reply, ECF No. 37-1, on the docket, enter judgment, and close the case.

Entered this 19th day of September, 2024.

                                                   s/ Sara Darrow
                                              SARA DARROW
                        CHIEF UNITED STATES DISTRICT JUDGE